

National Board of Medical Examiners
3750 Market Street
Philadelphia, PA 19104-3102

215-590-9500 phone
www.nbme.org

**Confidential**

March 20, 2013

Denny S. Densmore
121 Marys Lane
Washington, NH 03280

1068610    4-089-766-2
Denial-Decision Letter (a

RE: USMLE Step 2 CK and Step 2 CS          USMLE ID#: 4-089-766-2

Dear Mr. Densmore:

We have thoroughly reviewed your request for test accommodations for the United States Medical Licensing Examination (USMLE) Step 2 Clinical Knowledge (CK) and Step 2 Clinical Skills (CS) and accompanying material in accordance with USMLE guidelines for examinees with disabilities. Your request was reviewed within the framework of the Americans with Disabilities Act (ADA) as amended by the ADA Amendments Act of 2008 (together, "ADA"). We consulted an expert in disorders of learning and Attention-Deficit/Hyperactivity Disorder (ADHD) to assist us in reviewing the documentation.

In your request, you report being diagnosed with a reading disorder in 2006, writing and mathematics disorders in 2008, and ADHD in 2010. You write, *"For the entirety of my educational life I have struggled under the burden of reading/learning disorders which were not formally diagnosed until adulthood...The measured discrepancy between my poor 'academic literacy' and my general intellectual ability has created chronic disappointment and frustration in my formalized schooling."*

The most current clinical documentation provided was a December, 2010 report of Neuropsychological Assessment. Lynda J. Katz, Ph.D. writes that you completed your fourth year of medical school at Medical University of South Carolina College of Medicine in 2008 but could not graduate because you did not pass Part II of the USMLE. She concludes, *"...while Mr. Densmore is currently functioning within a Superior range of cognitive ability overall, there is a significant difference in his measured cognitive abilities when the tasks demands both working memory and psychomotor processing speed...The impact on reading fluency and resultant reading comprehension is significant and functionally impairing as a result and meets criteria for a reading disorder."*

Professionally recognized diagnostic standards for a learning disorder presume the existence of an underlying central nervous system dysfunction which is reflected in normative deficits in cognitive functioning and in related areas of academic functioning. The conclusions of your evaluator notwithstanding, your overall performances on a range of cognitive and academic tasks administered in 2006, 2008 and 2010, including processing speed, Broad Reading and Broad Written Language are well within the range of average functioning and do not demonstrate impairments. For example, your 2006 *Wechsler Adult Intelligence Scale, Third Edition (WAIS-III)* Processing Speed Index score was better than 70% of a national sample of same age peers and your Working Memory Index score was better than 87% of age peers. In 2008, your *Woodcock-Johnson III (WJ-III)* Broad Reading Cluster score was better than 62% of a national sample of same age peers and you Broad Written Language Cluster score was better than 72% of age peers. Your 2010 *WJ-III* Reading Fluency score was better than 35% of same age peers and your Writing Fluency score was better than 52% of age peers. Overall, these data do not demonstrate impairments that limit a major life activity relative to most people. Average range reading and writing skills, no matter how discrepant from one's Superior Verbal IQ score are average nonetheless and do not demonstrate impaired functioning.

Learning difficulties of sufficient severity to substantially compromise academic functioning are generally recognized as being developmental in nature. Individuals with learning disabilities typically present a long history of academic difficulties and poor achievement dating back to elementary school. The records provided show that your reading performances on a standardized academic achievement test taken in 10th grade were well within the average range,

better than 83% of a national sample of same grade peers. Dr. Katz writes that you reported no problems learning to read and you did well until middle school when you lost interest in academics. You reportedly were more interested in being out of doors and described your high school classes as 'intolerably boring and didactic.'

According to Dr. Katz's report, you dropped out of high school prior to graduation and joined the Navy where you acquired your GED. You reportedly did well in the military, making rank of Sergeant in 18 months and graduating at the top of your class in weapon systems electronics. In 1990, you earned average range SAT scores of 440 Verbal and 510 Math, better than 54% and 60% of a national sample of college bound seniors. These data do not demonstrate impaired functioning that limited a major life activity relative to most people.

In her report, Dr. Katz concludes, *"Results from measures tapping into mental flexibility and selective attention are highly suggestive of those found in individuals with executive function issues such as are common in individuals with an underlying attention deficit disorder although Mr. Densmore self-report would minimize the frequency and saliency of many behaviors."*

Like learning disorders, ADHD is a developmental disorder with a childhood onset. Even if not diagnosed in childhood, ADHD typically results in a chronic and pervasive pattern of functional impairment in academic, social, vocational, or daily adaptive functioning. Your documentation does not demonstrate a record of chronic and pervasive problems with inattention, impulsivity, behavioral regulation, or distractibility that impaired your functioning during your development or currently.

ADHD affects people over time and across situations, not in one circumscribed area such as timed test taking or in a demanding academic setting such as medical school. It must be documented beyond self-report that such symptoms have consistently and pervasively disrupted functioning in multiple behavioral domains. The current impact of the disorder needs to be evident in real world functioning and result in clinically significant impairment in at least two settings. You reportedly worked for General Electric as a quality control technician for eight years after discharge from the Navy. You earned two associate degrees prior to transferring to the University of South Carolina in Spartanburg where you graduated with a degree in behavioral neuroscience. No objective data or documentation were provided via formal faculty/supervisor feedback, military records, job performance evaluations, or through other sources of information verifying that you have shown pervasive problems managing daily demands for attention, organization or executive functioning.

Accommodations are intended to provide access to the USMLE testing program for individuals with a documented disability as defined by the ADA. A diagnostic label, in and of itself, does not establish coverage under the ADA, nor does prior receipt of accommodations for a particular activity guarantee that identical accommodations are indicated or will be available in all future settings and circumstances. The ADA covers individuals who are substantially limited in a major life activity. Determination of whether an individual is substantially limited in functioning as compared to most people is based on assessment of the current impact of the identified impairment.

Your documentation does not demonstrate that you are currently substantially limited in a major life activity as compared to most people or that extended testing time is an appropriate modification of your Step 2 CK and Step 2 CS test administration. Therefore, after a thorough review of all of your documentation, I must inform you that we are unable to provide you with the requested accommodations.

We will advise Applicant Services to process your exam application without test accommodations. You may inquire at usmlereg@nbme.org or call Applicant Services directly at (215) 590-9700 with any questions about your scheduling permit.

Sincerely,

Catherine Farmer, Psy.D.
Director, Disability Services
ADA Compliance Officer, Testing Programs